IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA   ) | |
| ) | |
| v.   ) | |
| ) | No. 1:18-CR-457-AJT |
| BIJAN RAFIEKIAN, *et al.*,   ) | |
| ) | |
| Defendants.   ) | |

GOVERNMENT'S MOTION
TO ESTABLISH CRIME-FRAUD EXCEPTION

For the reasons that follow, the United States respectfully requests that the Court find that statements made by defendant Ekim Alptekin to his attorneys at Arent Fox LLP, or other information or documents provided by him to the firm,[1] are not covered by the attorney-client privilege because, *inter alia*, the information falls within the crime-fraud exception to the privilege.

INTRODUCTION

As discussed below, to establish a crime-fraud exception to the attorney-client privilege, the government must make a *prima facie* showing that Alptekin was engaged in or planning a criminal scheme when he sought the advice of counsel and that the statements by Alptekin to Arent Fox bear a close relationship to Alptekin's scheme to commit the crime.[2] We wish to make clear at the outset that the government is aware of no evidence – and we make no contention here – that Arent Fox or its attorneys were aware that the statements that Alptekin

---

[1] We will refer to these collectively as Alptekin's statements.

[2] *See, e.g., United States v. Brown*, No. 01-4799, 52 Fed. App. 612, 614 (4th Cir. Dec. 12, 2002).

made to them were false or that the statements were otherwise in furtherance of any crime or fraud. No such showing is needed, however, to dissolve the attorney-client privilege.[3]

On December 12, 2018, and again on May 23, 2019, a grand jury in this District found probable cause to believe that Alptekin had conspired with defendant Bijan Rafiekian to act as an agent of a foreign government and to make willfully false statements in a filing by the Flynn Intel Group ("FIG") under the Foreign Agents Registration Act ("FARA"). These false statements in the FARA filing are detailed in paragraphs 52 through 63 of the superseding indictment returned by the Grand Jury. As the Grand Jury found, the false statements were the direct result of a number of false statements made by Alptekin, through his attorneys at Arent Fox, to the FIG attorneys who prepared the filing. Given that two grand juries have already made a probable cause finding as to the existence of the conspiracy from July 2016 through March 2017, including at the time the false statements were made, there is ample evidence to establish a *prima facie* showing that Alptekin was engaged in a crime or fraud at the time that he consulted Arent Fox and that Alptekin's statements bear a close connection to Alptekin's scheme to commit the crime. As discussed below, this is all that the government must establish to vitiate the privilege.

STATEMENT OF FACTS

The superseding indictment arises from a conspiracy involving Rafiekian and Alptekin, a Turkish national with close ties to the highest levels of the Government of Turkey. *See* Superseding Indictment ("Ind.") ¶ 2; *see also, e.g.,* GEX 9; GEX 14; GEX 15. The object of the conspiracy was to covertly and unlawfully influence U.S. politicians and public opinion

---

[3] *E.g., In re Grand Jury Proceedings*, 102 F.3d 748, 751 (4th Cir. 1996) ("[T]he attorney need know nothing about the client's ongoing or planned illicit activity for the exception to apply.").

concerning Fethullah Gulen, whose extradition request by the Government of Turkey was meeting resistance at the Department of Justice. Ind. ¶ 3; *see also, e.g.,* GEX 13. As found by the Grand Jury, the object of the conspiracy was to delegitimize Gulen in the eyes of politicians and the public, and ultimately to secure Gulen's extradition. *Id*; *see also, e.g.,* GEX 42, GEX 43B. Although the Government of Turkey, through Alptekin, directed the work, *see, e.g.,* GEX 14, GEX 15, GEX 16, the scheme was to conceal the Turkish government's involvement in the efforts to discredit Gulen. Ind. § 3. Among the means of the conspiracy was to use Inovo BV, a Dutch company owned by Alptekin, to serve as FIG's "client." *Id; see also, e.g.,* GEX 18A, GEX 22A, GEX 30B. Inovo was purportedly to pay FIG's fee, although it is clear that Turkish government officials approved the budget for the project, and, through Alptekin, received regular updates on, and ultimately directed and controlled, FIG's work. Ind. ¶¶ 3, 17, 18; *see also, e.g.,* GEX 9, GEX 15, GEX 16, GEX 24A & B, GEX 29, GEX 40.

At the beginning of the discussions about the project, it was called the "Truth Campaign" and was to be funded by the Turkish government. Ind. ¶¶ 9, 16; GEX 10, GEX 16. For his part, Alptekin was to receive twenty percent of the contract amount. Ind. ¶¶ 10, 17; GEX 17, GEX 19. Indeed, immediately upon the payment from Alptekin to FIG, FIG wired back twenty percent to Alptekin, supposedly for his "consultancy fees." *See, e.g.,* GEX 25A, B & C, GEX 3A, B & C, GEX 34, GEX 37. From the start, Alptekin and Rafiekian made clear that knowledge of the project was to be very tightly controlled and limited to Rafiekian, his partner Michael T. Flynn, and Alptekin. Ind. ¶¶ 8, 9, 10, 11; *see, e.g.,* GEX 8, GEX 10, GEX 11. On August 10, 2016, in emails to Rafiekian and Flynn, Alptekin told them that he had met with "Turkish Minister #1" and "Turkish Minister #2" and that he had their permission to discuss "confidentiality, budget and the scope of the contract." Ind. ¶ 16; GEX 16.

However, the very next day, on August 11, 2016, Rafiekian sent an email to a wider group of FIG principals claiming that FIG was to be engaged by a "Dutch client" for a project now called "Operation Confidence." Ind. ¶ 18; GEX 18, GEX 19. Nonetheless, the evidence shows that the focus of the "new" project did not change in any way from the "Truth Campaign" and remained focused throughout on discrediting Gulen and painting Gulen as a fraud and a terrorist. *See, e.g.,* GEX 22B, GEX 23A & B. The change from the "Truth Campaign" to "Operation Confidence" was a change in name only. *Compare* GEX 10 *with* GEX 18A, GEX 13 *with* GEX 26B. The work culminated in an op-ed piece supposedly written by Flynn himself, but in fact ghost-written by Rafiekian and approved by Alptekin. Ind. ¶¶ 41-50; GEX 42, GEX 45A & B, GEX 47, GEX 48A & B, GEX 49. The op-ed was highly critical of Gulen – portraying him as the Turkish equivalent of Ayatollah Khomeini – and parroted the Turkish government's position that Gulen was a radical Islamist who should not be given safe haven in the United States.

After the publication of the op-ed in November 2016, the FARA Unit at the U.S. Department of Justice questioned FIG about the article and whether it had been written on behalf of the Turkish government, which would require FIG to register under FARA as a foreign agent. In response to this inquiry and media attention arising from the op-ed, Alptekin retained Arent Fox. Independently, FIG had hired Kristen Verderame and Covington & Burling to respond to the FARA Unit inquiry.[4] Verderame and Covington & Burling conducted an investigation that included requests for information from Alptekin. Through Arent Fox, Alptekin made false

---

[4] We wish to make clear here as well that there is no evidence – and no contention here – that FIG's attorneys, Covington & Burling and Verderame, were aware that the statements that Alptekin and Rafiekian made to them were false or that they were otherwise in furtherance of any crime or fraud.

factual representations to Verderame and Covington & Burling.[5] On January 18, 2017, Arent Fox sent Alptekin an opinion letter that explicitly said that it was based on facts that Alptekin had communicated to Arent Fox, which as discussed above were false. The same day, Alptekin forwarded the memorandum to Rafiekian, who provided it to Covington & Burling.

Ultimately, Covington & Burling drafted a FARA registration for FIG, which it filed in March 2017. However, given Alptekin's lies to Arent Fox, the FARA filing contained a number of misrepresentations. Ind. ¶¶ 52-55. For example, FIG's FARA filing falsely claimed that Flynn's op-ed was written "on his own initiative" and that "[n]either Inovo BV, nor any other person requested or directed publication of the op-ed." GEX 61 (Bates no. 350). Further, the filing claimed that Inovo, Alptekin's company, had retained FIG because Inovo had been hired by an Israeli company with an interest in establishing an oil pipeline in Turkey. GEX 58 (Bates no. 318). The name of this supposed Israeli client was Ratio Oil Exploration LP ("Ratio"). However, documentary evidence obtained from Ratio itself shows that whatever was the work Alptekin and Inovo were to perform for Ratio, it had nothing to do with FIG or the Turkey project.

As the Grand Jury determined, Alptekin and Rafiekian violated 18 U.S.C. § 951 by concealing the Government of Turkey's direction and control of the work that FIG supposedly performed for Inovo. The violations of 22 U.S.C. § 618(a)(2) found by the Grand Jury are based upon several false statements and omissions that Alptekin made to Arent Fox for inclusion in FIG's March 2017 FARA filing. Ind. ¶¶ 51-63. These false statement furthered Alptekin's continuing efforts to conceal the Turkish government's involvement in FIG's work. The

---

[5] To reiterate, the government is aware of no evidence suggesting that Arent Fox had any knowledge that Alptekin's statements were false.

superseding indictment returned by the Grand Jury supports all of these facts, and virtually every allegation is supported by, *inter alia*, the government exhibits accompanying this motion. The exhibits are numbered to correspond to the respective paragraphs in the indictment.

A<span>RGUMENT</span>

It is well settled that the attorney-client privilege is lost "when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Proceedings #5*, 401 F.3d 247, 251 (4th Cir. 2005). *See also, e.g.*, *In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir. 1989). To overcome the privilege, "the government must make a prima facie showing that the communications fall within the crime-fraud exception." *Id.* *See also In re Grand Jury Proceedings*, 674 F.2d 309, 310 (4th Cir. 1982). Significantly, "[i]n satisfying this prima facie standard, proof either by a preponderance or beyond a reasonable doubt of the crime or fraud is not required." *In re Grand Jury Proceedings #5*, 401 F.3d 247 (4th Cir. 2005). Indeed, the *prima facie* showing need only be "sufficient to justify, but not necessarily to compel, a finding" that the communications fall within the exception. *See Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1220 (4th Cir. 1976) (citing *Wright v. Rockefeller*, 376 U.S. 52, 57 (1963)). *See also In re Grand Jury Proceedings #5*, 401 F.3d at 251. Further, in determining whether the privilege applies, the district court may rely upon evidence that is not ordinarily admissible at trial. *E.g., In re Grand Jury Subpoena*, 884 F.2d at 127 (collecting cases).

The Fourth Circuit has held that to establish the crime-fraud exception, the government must make a *prima facie* showing that:

> (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the [statements] containing the privileged [information] bear a close relationship to the client's existing or future scheme to commit a crime or fraud.

*In re Grand Jury Proceedings #5*, 401 F.3d at 251. *See also Chaudhry v. Gallerizzo,* 174 F.3d 394, 403 (4th Cir. 1999); *In re Grand Jury Proceedings*, 33 F.3d 342, 349, n.13 (4th Cir. 1994) *Brown*, 52 Fed. Appx. at 614.

Here, the probable cause finding by the Grand Jury and the evidence supporting the allegations contained in the superseding indictment are more than sufficient to meet the government's burden to establish that "the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme." We have established a *prima facie* showing, at the very least, that for his part in the "Truth Campaign" or "Operation Confidence," no matter how it was styled, Alptekin and Rafiekian had "agree[d] to operate within the United States subject to the direction or control of a foreign government or official." 18 U.S.C. § 951(d).

The government has also established the relationship between the privileged information and the scheme to commit the crimes charged. From its inception, Alptekin and Rafiekian sought to conceal the role of the Turkish government in the project. *See, e.g.*, Ind. at ¶¶ 8-11, 16, 19. As the Grand Jury found, their attempts at obfuscation included a conspiracy to make false statements in FIG's FARA filing. The government now seeks evidence of what factual representations Alptekin made to the attorneys in connection with the drafting of FIG's FARA filing. Alptekin's false factual representations clearly bear a close relationship to the conspiracy to violate 18 U.S.C. § 951 because they were acts undertaken in furtherance of the conspiracy – they served to conceal Alptekin's crimes and to prevent the Government of Turkey's involvement in the project from becoming known. The false representations also bear a close relationship to the conspiracy to make material false statements and omissions on a FARA filing because they form the very basis for that charge.

CONCLUSION

For these reasons, the United States respectfully requests that the Court find that statements made by defendant Ekim Alptekin to his attorneys at Arent Fox LLP, or other information or documents provided by him to the firm, are not covered by the attorney-client privilege because the information falls within the crime-fraud exception to the privilege.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

| /s/ | By: | /s/ |
|---|---|---|

Evan N. Turgeon
Trial Attorney
Counterintelligence
   and Export Control Section
National Security Division
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 353-0176
Evan.Turgeon@usdoj.gov

James P. Gillis
Virginia Bar No. 65055
John T. Gibbs
Virginia Bar No. 40380
Assistant United States Attorneys
The Justin W. Williams
   United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 299-3982 (fax)
James.P.Gillis@usdoj.gov
John.Gibbs@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2019, I electronically filed the foregoing using the CM/ECF system, which will send a notification of such filing to counsel of record.

I further certified that I sent a copy of the foregoing by email and by first-class mail to the following counsel for defendant Alptekin:

>Matthew M. Nolan
>Arent Fox LLP
>1717 K Street, N.W.
>Washington, DC 20006-5344

Respectfully submitted,

/s/
James P. Gillis
Assistant United States Attorney