IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )   No. 1:18-CR-457-AJT |
| BIJAN RAFIEKIAN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT ALPTEKIN'S OPPOSITION TO MOTION TO ESTABLISH CRIME-FRAUD EXCEPTION**

The United States has, in a separate filing, opposed defendant Kamil Ekim Alptekin's motion to specially appear to contest the government's motion to establish the crime-fraud exception. However, if the Court is inclined to grant Alptekin's motion, we respectfully request that the Court find the crime-fraud exception applicable to Alptekin's putative attorney-client privilege with Arent Fox.[1]

After correctly stating the two-pronged standard for establishing the crime-fraud exception on page 1 of his opposition, Alptekin misses an essential point of the case he cites on page 3 as to the first prong. As his own case says, "an indictment *may* provide probable cause to believe that the crime charged was committed." *United States v. Stewart*, No. 03 CR. 717 (MGC), 2003 WL 23024461, at *2 (S.D.N.Y. Dec. 29, 2003) (emphasis added). In fact, more recent, and higher, decisions have more definitively recognized that an indictment satisfies the first prong required to establish the crime-fraud exception:

> The party invoking the crime-fraud exception "must make a prima facie showing: (1) that the client was engaged in (or was planning) criminal or fraudulent activity

---

[1] We reiterate that the government is not aware of any evidence suggesting that Arent Fox or its attorneys were aware that the statements that Alptekin made to them were false or that the statements were otherwise in furtherance of any crime or fraud.

> when the attorney-client communications took place; *and* (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity. By prima facie showing, we mean "a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud." . . . As to the first part, the district court correctly noted that the indictment provides a reasonable basis to believe that [the defendant] was engaged in criminal or fraudulent activity.

*United States v. Gorski*, 807 F.3d 451, 460–61 (1st Cir. 2015) (emphasis in original, citations omitted).

The Supreme Court has held as much in a quite similar context. In *Kaley v. United States*, 571 U.S. 320 (2014), the Court considered the weight to be given to an indictment in the context of the pre-trial restraint of assets. The Court applied a standard for determining whether pre-trial restraint is permissible that is very similar to the one for determining the application of the crime-fraud exception:

> That determination has two parts, reflecting the requirements for forfeiture under federal law: There must be probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime.

*Kaley,* 571 U.S. at 323–24.

The Court held that the grand jury's return of an indictment was conclusive as to the first prong:

> "[A]n indictment 'fair upon its face,' and returned by a 'properly constituted grand jury,'" we have explained, "conclusively determines the existence of probable cause" to believe the defendant perpetrated the offense alleged. And "conclusively" has meant, case in and case out, just that. We have found no "authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof." To the contrary, "the whole history of the grand jury institution" demonstrates that "a challenge to the reliability or competence of the evidence" supporting a grand jury's finding of probable cause "will not be heard." The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime.

*Kaley v. United States*, 571 U.S. 320, 328 (2014) (citations omitted).

Two grand juries in this District returned indictments finding probable cause to believe that Alptekin had conspired with Rafiekian to act as an agent of the Government of Turkey and to make false statements on FIG's FARA filing. That finding cannot be challenged, as *Kaley* and *Gorski* make clear. It is a short hop from there to establishing the second prong of the crime-fraud exception: that "the [communications] containing the privileged [information] bear a close relationship to the client's existing or future scheme to commit a crime or fraud."

For example, the Arent Fox opinion letter – expressly based upon representations made by Alptekin – contained the following:

> INOVO is representing RATIO, a private sector Israeli company, that owns a 15% share in the Leviathan gas consortium in Israel that wants to export gas into Turkey. INOVO was engaged in March 2016 by RATIO to advice on the investment climate in Turkey. As part of this contract RATIO also asked INOVO to provide geopolitical reporting with a special interest in Turkey's continued alignment with the West/United States. After some period of time, RATIO determined that the limited reporting on such matters by INOVO was insufficient and RATIO requested that INOVO outsource this service to more expert providers. INOVO subsequently reached out to FIG in August 2016 with the question to measure the strength and challenges of Turkish American relations.

GEX 93B, p 3. On January 18, 2017, the day he received the memorandum from Arent Fox, Alptekin forwarded it to defendant Rafiekian, who provided it to the law firm then conducting a FARA inquiry on FIG's behalf. These representations and others that Alptekin made to Arent Fox were incorporated directly into FIG's FARA filing:

> According to Arent Fox, LLP, counsel to Mr. Alptekin:
>
> 1. lnovo is a privately owned company that has not received, directly or indirectly; funds or financial support from any government during the course of its engagement of Flynn Intel Group Inc., including the Republic of Turkey.
>
> 2. At the time Inovo hired Flynn Intel Group, Inovo represented a private sector company in Israel that sought to export natural gas to Turkey, and it was for support of its consulting work for this client that Inovo engaged Flynn Intel Group, specifically to understand the tumultuous political climate at the time between the United States and Turkey so that Inovo could advise its client regarding its business opportunities and investment in Turkey.

GEX 58. Plainly, these statements "bear a close relationship to the client's . . . scheme to commit a crime."

For these reasons, the United States respectfully requests that the Court find that the crime-fraud exception applies with respect to any communications with, and any documents or other information provided to, attorneys from Arent Fox by defendant Alptekin that touch upon its representation of Alptekin in connection with the Flynn Intel Group and FIG's FARA filing in March 2017.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

      /s/
Evan N. Turgeon
Trial Attorney
Counterintelligence
   and Export Control Section
National Security Division
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 353-0176
Evan.Turgeon@usdoj.gov

By:       /s/
James P. Gillis
Virginia Bar No. 65055
John T. Gibbs
Virginia Bar No. 40380
Assistant United States Attorneys
The Justin W. Williams
   United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 299-3982 (fax)
James.P.Gillis@usdoj.gov
John.Gibbs@usdoj.gov

-5-

CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2019, I electronically filed the foregoing using the CM/ECF system, which will send a notification of such filing to counsel of record.

Respectfully submitted,

/s/
James P. Gillis
Assistant United States Attorney