FILED

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | No. 1:18-CR-457-AJT |
| BIJAN RAFIEKIAN, et al., ) | |
| ) | **UNDER SEAL** |
| Defendants. ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM REGARDING NOTICE OF CORRECTION TO THE RECORD

The gist of the Defendant's Memorandum Regarding Notice of Correction to the Record appears to be directed at a third motion to dismiss the indictment, this one based upon the defendant's suspicion that there were irregularities in the proceedings the led to the Grand Jury's return of the Superseding Indictment. In response to the defendant's memorandum, the United States respectfully submits that his substantive requests should be denied.

First, however, the United States takes no position on whether the Court should unseal the government's Notice of Correction to the Record. It was filed under seal to protect any potential prejudice that might result from its publicity. However, with regard to the disclosure of the government's *ex parte* motion, we object. Just as the defendant has been allowed to file *ex parte* submissions in this case on the basis that they would reveal the defense's trial strategy, the government should be permitted to do the same – especially when the *ex parte* motion was generated by a concern for protecting *the defendant's* right to a fair trial. If the defendant wishes to have the Notice unsealed, there was no need for the government's motion in the first place, and rather than disclose our trial strategy, we would ask permission to withdraw the now-

unnecessary motion. The other relief sought in the defendant's memorandum is also unwarranted, and we ask that it be denied.

Foremost, as the defense correctly notes, General Flynn is subject to subpoena by the defense and, if they believe he should be heard from, they are free to call him as their own witness in their case. It is strange for a defendant to complain that the government is *not* calling a witness. But if for some reason the defense wants to call him for the purpose of showing that he is a "liar," as they claim throughout their memorandum, they are certainly able to do so – assuming that the point would have some relevance to the case. Thus, there can be no prejudice if the government does not call him in its case-in-chief.

Moreover, except in death penalty cases, a defendant has no right to advance notice of who the government's witnesses will be. The Court's December 18, 2018, scheduling order did not require the government to do so until five days before trial. Even then, the government has never been required to call *every* witness that it lists, a decision which may depend upon any number of developments shortly before or during trial. The defendant therefore cannot be prejudiced by being informed, several days before the government was required to do so, that it would not be calling Flynn as a witness.

Also, although the government had no obligation to do so, it allowed the defense to review *all* of the 302s that had been prepared in connection with the investigation of the charges in the indictment – including the nineteen Flynn 302s. A small army of note-taking associates made exceptionally good use of that opportunity. Thus, the defense's request that "the Court order the government to produce all . . . 302 memoranda pertaining to Flynn" is moot – the government already did just that several weeks ago, and as has been discussed in earlier pleadings, offered to do so much sooner.

The defense has had more than half a year to prepare for trial. At no point during that time was the government required to advise them of the witnesses it would call. Meanwhile, virtually since the arraignment the defense has had all of the documents relevant to the issues it now raises, including marked trial exhibits corresponding to every allegation in the indictment and the government's work product consisting of a sizeable binder culling out the documents that the government considered most relevant. That evidence alone is ample to convict the defendant beyond a reasonable doubt. If the defense supposed until only recently that Flynn was "the presumptive cornerstone witness for the government,"[1] that presumption was not the fault of the government. It was simply a consequence of the inevitable choices that one must make in our adversarial system of justice.

In mid-June, Flynn changed lawyers from Covington & Burling to Sidney Powell. Shortly before the July 2, 2019, email that the government sent to the defense,[2] we learned from Ms. Powell for the first time that Flynn was taking the position set forth in the email. Whatever the defense may say about how it "interpreted" the government's email,[3] we were simply setting forth factually what we had been told by Flynn's new counsel – no more, no less. To the extent that Flynn's reversal came as a surprising and supposedly prejudicial revelation to the defense, it can be presumed that it came as no less of one to the government.

It is true that the Court ordered the government to list those whose statements the government planned to introduce pursuant to FED. R. EVID. 801(d)(2)(E).[4] Here, however, the

---

[1] Def. Mem. 6.

[2] Def. Mem. Ex. D.

[3] Def. Mem. 4.

[4] The Court did not require the government to identify all co-conspirators, only those whose statements the government planned to offer under that exception. Also, the Court did not require

government plans to introduce only one document relying upon FED. R. EVID. 801(d)(2)(E). The document in which Flynn is the declarant is an exhibit that will be similar to GEX 40, which is attached. The defense has had this document as a specifically marked trial exhibit since shortly after the arraignment. It could come as no surprise to the defendant that the government will be introducing this exhibit at trial, whether as a co-conspirator statement or under other exceptions to the hearsay rule. Whatever – if any – miniscule prejudice the defense might face as a consequence of learning in advance of trial that the government will argue an additional basis for the admission of this exhibit, it can hardly justify the dismissal of the indictment.

On that topic, there are no grounds for dismissing the indictment on the basis of the defendant's wild suspicion that there were irregularities in the presentation of the indictment to the grand jury. "The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991) (quoting *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring in judgment)). Nothing of the sort has been shown here. A witness – particularly a cooperating defendant – recanting or changing previous admissions is likely a daily occurrence in districts across the country. That cannot be a sufficient basis, especially in light of Supreme Court precedent, for "hold[ing] an evidentiary hearing to determine whether the Indictment . . . was procured through false statement."[5] Otherwise, district courts would be doing little else, and indictments would be subject to dismissal left and right.

---

the government to identify the specific co-conspirator statements that the government planned to introduce.

[5] Def. Mem. 1.

FED. R. CRIM. P. 6(e) prevents the government from saying whether Flynn testified before the grand jury, nor can it say what evidence was presented to the Grand Jury that returned the Superseding Indictment. However, the defendant's assertion that the investigation of the defendant rested entirely upon statements by Flynn is belied by volumes of evidence that the government has produced to the defendants, included the marked trial exhibits directly implicating the defendant, which were given to the defense months ago.

Finally, the defendant continues to beat the drum that there was a "demonstrably false certificate of dissolution" in the winding up of FIG's operations. To the extent that it has any bearing upon the issues here, it warrants mentioning that the defendant *knows* that he fully approved of the dissolution of FIG and that he *knew* in advance that this was being done. This is clear from the defendant's own emails, which are attached. Having claimed so often in this and earlier pleadings that the dissolution was somehow nefarious, one wonders how the defense would characterize this assertion now.[6]

---

[6] Among all the defense's various feints at prosecutorial misconduct in their memorandum, one requires a response. The defense claims that the "Indictment proceeded only because Flynn . . . was willing to sign a *concocted* Statement of Offense." Def. Mem. 6 (emphasis added). Implicit in this assertion is that it was the government that "concocted" the purported "false representations." *Id.* This claim is baseless, offensive, and unprofessional.

-5-

For all of the foregoing reasons, the United States respectfully asks the Court to deny the requests made by the defendant in his Memorandum Regarding Notice of Correction to the Record.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

| /s/ | By: /s/ |
|---|---|
| Evan N. Turgeon | James P. Gillis |
| Trial Attorney | Virginia Bar No. 65055 |
| Counterintelligence | John T. Gibbs |
|    and Export Control Section | Virginia Bar No. 40380 |
| National Security Division | Assistant United States Attorneys |
| United States Department of Justice | The Justin W. Williams |
| 950 Pennsylvania Ave., NW |    United States Attorney's Office |
| Washington, DC 20530 | 2100 Jamieson Avenue |
| (202) 353-0176 | Alexandria, VA 22314 |
| Evan.Turgeon@usdoj.gov | (703) 299-3700 |
|  | (703) 299-3982 (fax) |
|  | James.P.Gillis@usdoj.gov |
|  | John.Gibbs@usdoj.gov |

CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2019, I sent the foregoing by email to counsel for the defendant and to counsel for Michael T. Flynn.

                Respectfully submitted,

                _____/s/_____
                James P. Gillis
                Assistant United States Attorney



Turkish Minister #1

Team, Overall a Very good call. I may be meeting with him early next week during an American Turkish conference in WDC. We discussed the long term effort, as well as the tax issue that Mike B and I discussed this morning. I walked him through the social media analysis which he found very interesting and worth talking to the [Turkish Minister #1] about as well as all other talking points (thank you for pulling those together). Regarding RA. .. he felt a phone call between Us would work best. We can discuss who is best to do that call, between Brian and Mike but this is something we should do. I mentioned that if a parallel effort I'm okay. We don't want to trip over each other however. I also walked him through the monopoly and its status as well as the videos. He was happy to hear where those efforts are at.

Next strategic step: We need to put together an initial formal assessment/ report w attachments and initial videos (if they're ready) nlt next weekend. Let me know if this is doable. Seems to me we have all the info to put together a solid assessment with facts, assumptions, our analysis, data backing up what we've learned and initial conclusions and recommendations. Among the recommendations is to take this effort to a long term relationship. We discussed the business side of what we're doing and I told him we have many irons in the fire and at some point very soon I need a commitment beyond the initial 90 days. He agreed.

Bottom line, a good call and we are on the right track.

Mike

GOVERNMENT
EXHIBIT
40
1:18-CR-457